Robert Tauler (SBN 241964)
robert@taulersmith.com
Wendy Miele (SBN 165551)
wmiele@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213)-927-9270

*Attorneys for Plaintiff*
*Anne Heiting*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE HEITING, an individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br>JAMES AVERY CRAFTSMAN, INC., a Texas Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 631)** |

COMPLAINT

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

2. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Central District of California by regularly engaging in chats with individuals in California through the chat box feature on its website. Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Athena (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

4. Plaintiff Anne Heiting ("Plaintiff") is a citizen of California residing within the Central District of California.

5. James Avery Craftsman, Inc. ("Defendant") is a Texas corporation that owns, operates, and/or controls www.jamesavery.com.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the

Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## **FACTUAL ALLEGATIONS**

8. Chat boxes are common on many commercial websites and serve many legitimate business purposes, including facilitating sales and reducing expenses for business. However, in recent years, aided by significant advances in technology, chat boxes are increasingly operated by third party data companies as a means for corporate surveillance.

9. Due largely to the fact that commercial chat boxes seem innocuous and inconspicuous, very few website users suspect that their chats are being used as a means to obtain significant amounts of information about them. However, like all means of surveillance, the inconspicuous nature of chat boxes is exactly what makes them valuable tools to meet their objective. In many instances, such as here, the website operating the chat boxes never disclose the nature of the chat box interaction: namely that chats are being routed to third party servers so that a third party may to record, store, and use communication for the purposes of collecting information about a specific internet user.

10. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. The vast majority of website operators comply by disclosing to visitors that their communications are being recorded, and the purpose of such recording.

### **Defendant James Avery**

11. James Avery Craftsman, Inc. (hereafter referred to as "the Defendant") is a retail company that operates the website www.jamesavery.com, which sells jewelry. Consumers from

1  across the country, including California residents, access and use the website to explore and use
2  the services offered by Defendant.

3  12.  The Defendant has engaged in deceptive practices by surreptitiously implanting code on its website allowing for the unauthorized recording and creation of transcripts of private conversations. In order to facilitate this invasive eavesdropping, Defendant has entered into financial agreements with salesforce.com ("Salesforce") to embed code into Defendant's website chat function. In contracting with Salesforce, Defendant chooses which functionalities of the software to deploy, including how data is transferred, what data to track, and how chats are stored by Salesforce. The code enables Salesforce to covertly intercept and monitor a website visitor's chat conversation in real-time, without their knowledge or consent.

13.  The chats that users like Plaintiff believe are taking place on Defendant's website are really taking place on Salesforce through an iFrame (of Inline Frame), which is a code that links to another site. The code is shown below:

```
</script>
<div id="crl8-homepage-multisize-grid-modal"></div>
<div id="crl8-homepage-multisize-grid-uploader"></div>
<iframe id="esw_storage_iframe" src="https://service.force.com/embeddedservice/5.0/esw.html?parent=https://www.jamesavery.com/" title="Live Chat Metadata" style="display: none;">…</iframe> == $0
<script type="text/javascript" src="https://d.la5-c2-ia5.salesforceliveagent.com/chat/rest/EmbeddedServic…Chat_Team&callback=embedded_svc.liveAgentAPI.handleChatSettings&version=48"></script>
<script id="invite-esw-script" type="text/javascript" src="https://service.force.com/embeddedservice/5.0/client/invite.esw.min.js"></script>
<div class="embeddedServiceHelpButton">…</div>
```

14.  Thus, all the communication taking place on the James Avery website are taking place also on Salesforce's website. Once the user engages with the chat function, Salesforce "automatically creates a transcript for each chat session" that Defendant also can access.

### Salesforce

15.  Salesforce explains in "Schedule II" of its "Data Processing Addendum" (which applies to the chat function at issue) that Salesforce collects Personal Data in chats from anyone it can, including "[p]rospects" "of customers," like Plaintiff, whom Salesforce refers to as "Data Subjects."[1]  In addition to storing the chat transcripts automatically, Salesforce collects "Professional life data" "Personal life data" and "Localisation [sic] data."

---

[1] https://www.salesforce.com/content/dam/web/en_us/www/documents/legal/Agreements/data-processing-addendum.pdf

COMPLAINT

3

16. Salesforce markets its ability to store and use its chat function in numerous ways, first by marketing its ability of "connecting customer data across systems, apps and devices to create a complete view of customers." In this manner Salesforce uses chat data to enhance its own business.

17. Salesforce suggests that "[t]o be transparent with your customers, you can let them know what we do with chat transcripts."[2] However, Defendant does not do so.

18. Rather, Defendant does not disclose the recording and surveillance in any manner, using the recorded chat transcripts stored by Salesforce for "conversation mining" where Salesforce "reviews conversation data and extracts the contact reason" among other features.

19. Moreover, Salesforce brags about how it "ingests and stores real-time data streams at scale and combines it with Salesforce transactional data and includes built-in connectors that bring in data from every channel …and historical data from proprietary data lakes." Salesforce' markets its ability to store and use its chat function in numerous ways, first by marketing its ability of "connecting customer data across systems, apps and devices to create a complete view of customers." In this manner Salesforce uses chat data to enhance its own business.

20. Visitors would be shocked and appalled to know that Defendant secretly records those conversations and pays third parties to eavesdrop on them in real time to be "data targets" for non-descript mercantile campaigns. Defendant should not be permitted to acquire such extensive personal information from unsuspecting consumers who visit their website merely to make a purchase, such as buying a new coffee table. This blatant disregard for consumer privacy is unacceptable and warrants appropriate scrutiny and intervention.

**Plaintiff**

21. Within the statute of limitations period, Plaintiff visited Defendant's Website. Defendant did not inform Plaintiff, or any of the Class Members, that Defendant was secretly wiretapping or recording their communications or aiding, abetting, and paying third parties to

---

[2] https://help.salesforce.com/s/articleView?id=sf.live_agent_chat_transcripts.htm&type=5

COMPLAINT

4

eavesdrop on them, despite website users having a reasonable expectation of privacy in using the seemingly harmless chat box feature.

22. Defendant did not obtain Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

## CLASS ALLEGATIONS

23. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website using cellular or landline telephony, and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

24. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

25. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

 a. Whether Defendant caused electronic communications from class members with the Website to be recorded, intercepted, and/or monitored;

 b. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

 c. Whether Plaintiff and Class Members are entitled to statutory penalties; and

COMPLAINT
5

d. Whether Class Members are entitled to injunctive relief.

26. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

27. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

28. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

**Aiding and Abetting Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 631(a)**

29. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be

done any of the acts or things mentioned above in this section". Here, Defendant has violated the third clause.

30. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

31. The software embedded on Defendant's Website to record and eavesdrop upon the Plaintiff's communications qualifies as a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct alleged herein.

32. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff with Defendant's Website to be recorded. Defendant also aided, abetted, and even paid third parties to eavesdrop upon such conversations.

33. Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

34. Defendant's conduct constitutes aiding and abetting violations of Cal. Penal Code § 631(a). *Nora Gutierrez v. Converse, Inc.*, Case No.: 2:23-cv-06547- RGK-MAR (C.D. Ct CA 10/27/23.). Therefore, Plaintiff is entitled to injunctive relief and statutory damages.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order declaring Defendant's conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class against Defendant on the causes of action asserted herein;

4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA;

6. Actual damages;

7. Prejudgment interest; and

8. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: April 30, 2024                           TAULER SMITH LLP

By:   */s/ Robert Tauler*
      Robert Tauler, Esq.
      *Attorneys for Plaintiff*
      *Anne Heiting*

COMPLAINT
8

**DEMAND FOR JURY TRIAL**

Plaintiff Anne Heiting hereby demands a trial by jury.

DATED: April 30, 2024                                TAULER SMITH LLP


                                        By:  /s/ Robert Tauler
                                             Robert Tauler, Esq.
                                             *Attorneys for Plaintiff*
                                             *Anne Heiting*

COMPLAINT
9